Filed 9/23/21  P. v. Morrow CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CLIFTON DAWAYNE MORROW,<br><br>Defendant and Appellant. | B307003<br><br>(Los Angeles County<br>Super. Ct. No. VA067516) |

APPEAL from an order of the Superior Court of Los Angeles County, Raul Anthony Sahagun, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Clifton Dawayne Morrow challenges the trial court's denial of his Penal Code section 1170.95 petition. Morrow contends the trial court applied the wrong standard of proof and should have given him an evidentiary hearing. He also argues a jury should have decided the matter. We affirm. Undesignated statutory citations are to the Penal Code.

I

In 2003, a jury convicted Morrow of one count of premeditated and deliberate murder (§ 187, subd. (a)), four counts of attempted premeditated and deliberate murder (§§ 664, 187, subd. (a)), and three counts of assault with a machine gun (§ 245, subd. (a)(3)). The jury found gang enhancements true with respect to each charge. (§ 186.22, subd. (b)(1).) Regarding the murder charge, the jury found true an allegation that Morrow had personally used and discharged a firearm causing death. (§ 12022.53, subds. (b)–(d).) The jury also found true the allegation that Morrow personally used and intentionally discharged a firearm in connection with the four attempted murder charges (§ 12022.53, subds. (b)–(c)) and that he personally used a firearm in connection with the charges of assault with a machine gun (§ 12022.5). The trial court sentenced Morrow to a term of 50 years to life for the murder and related firearm enhancement. For the attempted murders and firearm enhancements, the court sentenced him to two consecutive terms of 15 years to life plus 20 years, one concurrent term of 15 years to life plus 20 years, and one concurrent term of 20 years to life plus 20 years. The court stayed sentences for the assaults and gang enhancements.

The jury heard about two shooting episodes: one on August 11, 2001, and another on August 22, 2001. The earlier shooting resulted in a death; the later one did not.

The shooting on August 11, 2001, involved the following events. Members of a rival gang, the Florencia, had shot at Morrow and fellow Crips members earlier that day. That evening, Morrow and another gang member went looking for payback. They spotted two young Hispanic men in an alley. Morrow and his companion got out of their car and shot at the two men. Bullets killed one. The other escaped. Neither was a gang member.

Morrow gave different accounts of this shooting. He first admitted to being one of the shooters, but claimed he shot only once before his gun jammed and the bullet hit a pole. Police returned to the scene and found a metal fence pole with a bullet's indentation. Morrow later claimed he was not at the shooting, but fellow gang members told him to take responsibility and provided him information about it to convince the police.

At the trial, with regard to the murder charge, the court instructed the jury on direct aider and abettor liability as well as liability under the natural and probable consequences doctrine. The prosecutor emphasized in her closing argument that Morrow could be convicted of murder if the jury found he aided and abetted the crime of assault with a deadly weapon and the natural and probable consequence of that crime was murder. We affirmed Morrow's convictions in an unpublished opinion: *People v. Morrow* (Oct. 29, 2004, B167384).

On April 17, 2019, Morrow filed a petition for resentencing under section 1170.95 using a form petition. He checked boxes stating that he had been convicted of first or second degree

3

murder pursuant to the felony murder rule or the natural and probable consequences doctrine and that he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189.

The trial court appointed counsel for Morrow. The prosecution filed a response to the petition. The trial court scheduled a hearing to set a date for an evidentiary hearing. The prosecution filed a brief asking the court to reconsider finding a prima facie case. At a later hearing, both sides argued whether Morrow had made a prima facie showing. At the conclusion of the hearing, the trial court reaffirmed it would find a prima facie case and set an evidentiary hearing. The trial court told counsel it did not think it needed additional evidence, "but that does not preclude you from presenting evidence." Neither side submitted additional evidence. Morrow submitted an eligibility brief.

The trial court opened the next hearing by saying, "The matter is set for an [evidentiary hearing] re an 1170.95 petition." The trial court noted it had reviewed all of the papers and the entire file. After argument from counsel, the trial court summarized the evidence: "Well, what concerns me is he drives where he's in a car with two other people, he tells the police that he had been shot at that day or the day before and he went over there for pay-back. [¶] He and the other guy see two Latinos presumably from—presumably they think they're from Florencia. They both jump out and they both open fire. I don't think that's in dispute. They both open fire, one of the guys is hit and killed. . . . How is he not a direct aider and abettor of killing that person?"

After discussion with counsel, the trial court noted, "I'm not quite sure about [what to do with certain evidence], but I don't

4

think I have to get there because we know they're gang members, we know there is a war going on between 89th Crips and Florencia." The trial court continued to summarize what "we know" from the evidence and Morrow's admissions, before concluding, "So I think that he went there with the intent to kill . . . . [¶] [A]t least two people jump—are in the car, both jump out and they shoot and empty their guns at the fleeing victims shooting and killing one of them, and I think that makes him a direct aider and abettor and I think that he could be convicted of that charge of murder beyond a reasonable doubt under the present law."

Based on this finding, the trial court denied Morrow's petition. Morrow appealed this order.

## II

Morrow argues he did not receive an evidentiary hearing and the trial court applied the wrong standard of proof. He also maintains he was entitled to a jury. These arguments are incorrect.

Before tackling these arguments, we lay the groundwork.

The Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (SB 1437), effective January 1, 2019, "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Section 1170.95 allows persons convicted of felony murder or under a natural and probable consequences theory to petition the court to have their convictions vacated and to be resentenced. (§ 1170.95, subd. (a).)

To seek relief under section 1170.95, the petitioner must file a petition averring: (1) an accusatory pleading allowed the prosecution to proceed under a felony-murder or natural and probable consequences theory; (2) a jury convicted the petitioner of first or second degree murder at trial, or the petitioner accepted a plea offer instead of a trial at which the jury could have convicted the petitioner of first or second degree murder; and (3) the petitioner could not now be convicted of first or second degree murder because of the amendments to sections 188 and 189. (§ 1170.95, subd. (a)(1)–(3).)

The Supreme Court recently clarified that, once a facially sufficient petition has been filed, the trial court must appoint counsel if so requested. (*People v. Lewis* (2021) 11 Cal.5th 952, 962–963 (*Lewis*).) The trial court then, after receiving briefing, is to determine whether the petitioner has made a prima facie showing she or he is eligible for relief. (§ 1170.95, subd. (c).) If the petitioner makes such a showing, the trial court issues an order to show cause and sets an evidentiary hearing to determine whether to vacate the conviction, recall the sentence, and resentence the petitioner. (§ 1170.95, subd. (d)(1); *Lewis*, at p. 960.)

## A

Morrow first argues the trial court erred in not finding a prima facie case and setting an evidentiary hearing under section 1170.95, subdivision (d)(3). This argument is puzzling. The trial court did just that.

The trial court found a prima facie case and scheduled a hearing to set an evidentiary hearing: multiple minute orders reflect this. After these orders, the prosecution filed a brief asking the trial court to reconsider its finding that Morrow had

6

made a prima facie showing.  At a later hearing, the trial court heard argument from both sides before rejecting the prosecution's request.  As Morrow acknowledges, at the end of that hearing, the trial court reiterated it was finding a prima facie case.  The court set an evidentiary hearing.  The trial court told counsel it did not think it needed additional evidence, but "that does not preclude you from presenting evidence."  At the start of the next hearing, the trial court again stated, "The matter is set for an [evidentiary hearing] re an 1170.95 petition."

Morrow's argument that the trial court improperly relied on only the pleadings and the record of conviction is incorrect.  The trial court explicitly invited Morrow to provide additional evidence.  He declined.  Nor does Morrow now identify evidence he would have presented.  Either party *may* introduce new evidence at the evidentiary hearing, but the statute does not demand it.  (See § 1170.95, subd. (d)(3) ["The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens."].)

Morrow filed a supplemental brief addressing the Supreme Court's recent *Lewis* decision.  Morrow argues *Lewis* clarified how a trial court may use a record of conviction and the standard of proof to be applied in determining whether a prima facie case has been made.  This point is accurate and irrelevant, because the trial court found a prima facie case.

Morrow's claim the trial court applied the wrong standard of review fails because, as we next determine, the trial court applied the correct standard.  And this point does not relate to whether the trial court denied him an evidentiary hearing.

7

B

Morrow next argues the trial court improperly applied a substantial evidence standard. Morrow alternatively advocates for a reasonable doubt standard and a harmless error standard based on *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).

The prosecution initially argued the substantial evidence standard is the correct one, but later filed a supplemental brief changing their position. The prosecution now contends, correctly, that the trial court properly applied the reasonable doubt standard.

We first consider the substantial evidence standard and the reasonable doubt standard. There is a split of authority in the Courts of Appeal about this. Our colleagues in Division One adopted a test akin to the substantial evidence standard. (*People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309.) The Sixth Appellate District found the reasonable doubt standard applied. (*People v. Lopez* (2020) 56 Cal.App.5th 936, 949 (*Lopez*), review granted Feb. 10, 2021, S265974.) Under this view, section 1170.95 requires the prosecutor to prove each element of first or second degree murder under the current law beyond a reasonable doubt. (*Ibid*.) Our colleagues in Division Seven agreed and further held the trial court must act as an independent fact finder in applying that standard. (*People v. Rodriguez* (2020) 58 Cal.App.5th 227, 243–244 (*Rodriguez*), review granted Mar. 10, 2021, S266652.) The question is currently before the Supreme Court. Until we receive further guidance, we continue to follow the persuasive reasoning of *Lopez* and *Rodriguez*.

In *People v. Clements* (2021) 60 Cal.App.5th 597 (*Clements*), review granted April 28, 2021, S267624, Division Two of the Fourth Appellate District followed *Lopez* and *Rodriguez*, but added its own gloss: section 1170.95 does not require the trial court to hold an entire new trial; rather, the parties and court may properly focus on evidence relevant to the changes to sections 188 and 189. *(Clements*, at p. 618.) The prosecution urges us to adopt this approach. We do not read *Clements* as contradicting *Lopez* and *Rodriguez*, but rather as recognizing the practical reality that only certain elements may be in dispute during a subdivision (d)(3) evidentiary hearing and that the parties and trial court will focus on those elements. *Clements* does not preclude consideration of evidence relevant to any element of the murder charge. Rather, it acknowledges the parties and trial court may not explicitly discuss undisputed elements.

Morrow's argument against the *Clements* approach appears to be based on the misconception that *Clements* endorsed an independent fact finder role only as to new evidence and a substantial evidence review role for the cold record. *Clements*, however, did not so rule, nor does the prosecution here advocate such an approach.

Having determined *Lopez*, *Rodriguez*, and *Clements* require the trial court to act as an independent fact finder and to determine whether the prosecution has established the petitioner could be convicted of first or second degree murder under the current law, we turn to analyzing what the trial court did here.

Morrow asserts the trial court applied a substantial evidence standard rather than requiring the prosecution to prove its case beyond a reasonable doubt. The record is to the

9

contrary.  When the trial court stated its conclusion, it found that, based on its review of the evidence, Morrow "could be convicted of that charge of murder beyond a reasonable doubt under the present law."  Moreover, the record includes no mention of the sufficiency of the evidence.  (See *Lopez*, *supra*, 56 Cal.App.5th at p. 952, review granted [that court "never used the words 'substantial evidence,' 'sufficient evidence,' or made any other indication that it was applying a sufficiency of the evidence standard" supported finding that court correctly applied beyond a reasonable doubt standard].)  The trial court distinguished a case Morrow cited on the ground that it was a direct appeal and therefore "the analysis was whether the evidence was sufficient to sustain the conviction."

Morrow's argument the trial court did not act as an independent fact finder is based on the trial court's phrasing:  "I think that makes him a direct aider and abettor and I think that *he could be* convicted of that charge of murder beyond a reasonable double under the present law."  (Emphasis added.)  This focus on the "he could be" language is misplaced.  As the *Lopez* court found, that a trial court uses "could" does not support the idea the court misapplied the law because that court is merely using the statutory language.  (*Lopez*, *supra*, 56 Cal.App.5th at p. 951, review granted; § 1170.95, subd. (a)(3).)

Viewed in its entirety, the transcript of the evidentiary hearing shows the court engaged in appropriate and independent factfinding.  It had "read all of the papers and reviewed the entire file."  After counsel gave statements, the court recited what it knew based on the evidence.  The court did not refer to what the jury found or what a hypothetical jury could find, but instead

10

made its own determinations.  The court's statements reflect this:

"I think it's clear they're trying to kill them"; "I think that he went there with the intent to kill"; "We know through his own admission that he had been shot at the day before or that day"; and "I'm not quite sure about [what to do with certain evidence], but I don't think I have to get there . . . ."  The court's conclusion similarly reveals an independent determination.

The court did misspeak when it asked, "[T]o get relief, what does the petitioner have to show?  Doesn't he have to show that he could not be convicted of first or second degree murder based on the laws as they are now?"  Defense counsel responded in the affirmative.  However, the prosecutor later clarified, "[I]t's my burden to show that he could be convicted, which I think that's what the court found."  The trial court responded, "Yes, that's correct."

Taken as a whole, the record shows the trial court appropriately acted as an independent fact finder and applied the proper reasonable doubt standard.  (See *People v. Carrington* (2009) 47 Cal.4th 145, 201 [looking at entirety of court's ruling to determine court applied correct standard, even if it misspoke in one instance].)

Although Morrow acknowledges the reasonable doubt standard adopted by the *Lopez* and *Rodriguez* courts reflects the statutory language, he contends that standard does not go far enough.  Instead, he argues the *Chapman* "harmless beyond a reasonable doubt" standard applicable on direct appeal must also be applied in the section 1170.95 context.  (See *Chapman*, *supra*, 386 U.S. at p. 24.)  We follow the *Rodriguez* decision, which

11

addressed and rejected this argument.  (See *Rodriguez*, *supra*, 58 Cal.App.5th at pp. 239–240, review granted.)

C

Morrow's third argument is that judicial factfinding by the trial court or by this court violates his constitutional rights to due process and to a jury.  SB 1437 is an act of lenity and does not implicate Morrow's constitutional rights.  (See *People v. Falcon* (2020) 57 Cal.App.5th 272, 279, review granted Jan. 27, 2021, S266041; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 [SB 1437 is "an act of lenity that does not implicate defendants' Sixth Amendment rights"].)  Morrow's citation to *Apprendi v. New Jersey* (2000) 530 U.S. 466 and its progeny is inapposite as SB 1437 can only shorten a sentence.  It cannot lengthen it.  (See *Lopez*, *supra*, 56 Cal.App.5th at p. 958, review granted [because factual findings under section 1170.5 cannot increase penalty, *Apprendi* concerns are not implicated]; *Dillon v. United States* (2010) 560 U.S. 817, 828 [no right to jury in limited resentencing proceeding based on downward modification].)

**DISPOSITION**

We affirm the order.

WILEY, J.

We concur:

GRIMES, Acting P. J.          OHTA, J.[*]

---

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.